No. 14,313.

Rudolph et al. v. Elder.
(95 P. [2d] 827)

Decided October 9, 1939.

Mr. Lowell White, Mr. Howard Roepnack, for plaintiffs in error.

Messrs. Grant, Shafroth & Toll, Mr. Douglas McHendrie, for defendant in error.

*In Department.*

Mr. Justice Knous delivered the opinion of the court.

Herein reference will be made to the parties as they appeared in the lower court where the defendant in error was plaintiff and plaintiffs in error were defendants. A trial by jury resulted in a recovery of judgment in favor of plaintiff against defendants in the sum of $2439.28 as damages for personal injuries allegedly resulting from the negligence of the defendants, who here seek a review of the judgment. At the time of the accident involved, defendants were the lessees and operators of the Adams Hotel in Denver and plaintiff was a guest therein. The record discloses that plaintiff sustained the injuries of which she complains as the result of a fall into a freight elevator shaft adjacent to the rear entryway of the hotel. This entryway is about fifteen feet long and six feet wide and leads directly from the alley in the rear of the hotel to the freight elevator. At the alley end thereof, is a door which at the time of the accident was open, and at the inner end, is another door leading to the elevator shaft. Toward the rear of the

passage, and to the left as one enters, is a door permitting access to the main lobby of the hotel via what is known as the Dutch Grill room. The complaint charged: "That the defendants were negligent in the maintenance of the said passageway and of the said elevator shaft and the door opening into said shaft, in that the passageway was dark and the objects therein indistinct and not easily discernible to one entering the passageway from the outside; and in that there was no adequate and plainly visible sign on said door opening into the elevator shaft giving notice or warning that it was an elevator door opening into said shaft; and in that said door was not so maintained that it could not be opened from the outside when the elevator was not resting at the floor level of the said passageway." By a second cause of action plaintiff alleged general negligence on the part of defendants. The answer denied the allegations of negligence as well as certain other matters contained in the complaint which hereinafter will be mentioned, and as a further defense charged that plaintiff was guilty of contributory negligence. Defendants do not seriously question the extent of plaintiff's injury nor claim that the verdict was excessive, but primarily seek reversal upon the grounds that the evidence of defendants' alleged negligence was insufficient to justify the submission of the case to the jury and that the testimony of plaintiff, taken in connection with what they claim are the physical facts, sufficiently establishes her contributory negligence. Incidental to these contentions and for the most part corollary thereto, error is assigned to the admission and rejection of certain evidence; to the refusal of the court to give requested instructions and to some of those given to the jury.

Plaintiff testified that shortly after her arrival at the hotel, one of the bellboys—whom she identified at the trial as Earl Turner, son of one of the defendants—during the time he was removing baggage from the auto in which she had arrived, advised her to store her car in

a near-by independently operated garage, saying: "Leave your car in the garage and come in the back entrance which is across the alley from the garage. There is a door there leading into the Dutch Grill of the hotel. Walk across the alley, go into the door, and you will find it will take you right into the lobby." Plaintiff placed her car in the garage indicated, but because, as she testified, it was very dark, did not then attempt to use the suggested route but returned to the hotel by going around the block and through the front entrance. About three o'clock the next afternoon plaintiff again was in this garage preparing to drive her car out and around in front of the hotel, when one of the garage employees suggested that she could proceed up to the alley and return to the hotel by the back entrance above mentioned, directing that she take the first door to the left after entering the rear passageway. Shortly thereafter plaintiff crossed the alley and entered the passageway to the hotel. On direct examination she testified concerning the immediately succeeding events as follows: "I stepped into the passageway, it was very dim in the passageway, very, and I looked for the door on the left, but there was none, I saw none, I saw there a piece of wood painted black, I thought that must be what was meant, and I put my hand out to find out if there was a knob, a handle or something to take hold of, but there was nothing on the door, and I pushed it and nothing happened, and I thought it was a panel of some sort, it is not a door, and right ahead of me there was a door, so I walked over to that and reached out my left hand, opened it very easily, reached out with my right hand, because I thought possibly there was another door behind it, that this one I was opening must be a panel door of some sort, and I reached out, and the next thing I knew I was falling through darkness." The door she opened, as may be apprehended from what has been said, was the door which led into the elevator shaft.

■ ■ In the interest of brevity and for better understanding, we trust, we pause in our recital of the evidence at this point to consider certain contentions of the defendants which are determinative of the degree of care as to the plaintiff's safety legally imposed upon them. They assert that in using the rear entryway plaintiff was a trespasser or, at most, a mere licensee, who was obliged to take the premises as she found them and that defendants owed her no duty except that of refraining from active negligence rendering the premises dangerous. We understand it to be unquestioned as a matter of law that a hotelkeeper's duty to keep his premises reasonably safe for the use of his patrons extends to all portions of the premises to which a guest may be reasonably expected to go. 14 R. C. L., p. 508, §14; 32 C. J., pp. 562-563, §70. In urging this point we feel defendants overlook the fact that at all times herein involved the plaintiff was a guest of the hotel and that, as we have seen, legally her status as such existed as to all parts of the hotel in which her presence might reasonably be anticipated by the defendants. The resolution of this matter, involving, as it does, questions of fact, was solely for the jury, and obviously the crucial point is whether, under the circumstances disclosed by the evidence, defendants might have reasonably expected plaintiff, as a *guest* of the hotel, to use this rear entryway. This factual situation renders impertinent the consideration of many of the questions, argued at length by defendants, which ordinarily are involved in determining whether a strictly *non-guest* injured on hotel premises technically is a trespasser, licensee or invitee. For this reason such authorities as *Hooker v. Routt Realty Co.,* 102 Colo. 8, 76 P. (2d) 431, and similar cases are wholly inapplicable to the case at bar.

■ ■ As has been mentioned, plaintiff testified to an invitation by a bellboy of the hotel. The inferential denial of the conversation which plaintiff testifies she had with the boy did no more than create a conflict in

evidence upon this issue, properly to be determined by the jury, which likewise, under the evidence presented, was the sole arbiter of his authority or lack of authority in offering the directions mentioned. In addition to the testimony of plaintiff relating to the alleged express invitation, several witnesses stated that, with the knowledge of the defendants, this passageway had been regularly and freely used by guests of the hotel for some years in going to and from the garage in question. Notwithstanding defendants' objection thereto this evidence clearly was admissible to show a custom and practice from which it well could be inferred that defendants reasonably might expect other guests to so use this portion of the hotel. It is well established that an invitation to a customer or patron to go to certain parts of business premises may arise by implication from a known customary use of the character here disclosed. And "a business invitation includes an invitation to use such part of the premises as the visitor reasonably believes are held open to him as a means of access to or egress from the place where his business is to be transacted." Restatement of the Law, Torts-Negligence, §343. See, also, *S. H. Kress & Co. v. Markline,* 117 Miss. 37, 77 So. 858; *Chichas v. Foley Bros. Grocery Co.,* 73 Mont. 575, 236 Pac. 361. As to invitation by implication generally, see *Rocky Mt. Fuel Co. v. Tucker,* 72 Colo. 308, 211 Pac. 383. Patently the evidence on this issue was amply sufficient to take the question to the jury. Defendants argue that the jury was not properly instructed on this issue. We cannot agree. The instructions given properly informed the jury that the duty of the defendants to keep the premises in a reasonably safe condition as to the guest-plaintiff, extended only to "portions of the premises to which the plaintiff was entitled to go, by express or implied invitation, and at which her presence might reasonably have been anticipated."

■ Defendants next contend that the directions of the garage employee to plaintiff "to take the lefthand

door," as a matter of law acted as a limitation on any existing invitation to the passageway to the use of that door and no more. It is certain, as counsel for defendants argue in connection with other features of the case, that the voluntary direction of the garage employee under no circumstances could be deemed a legal invitation. Hence no limitation could arise therefrom even though the evidence was pertinent in considering the alleged contributory negligence of plaintiff. We must assume that the jury, in arriving at its verdict, concluded that within the rear passageway the legal relationship of the defendants and plaintiff was that of hotelkeeper and guest. As a result of this relation the defendants would be liable for any bodily injury proximately suffered by her as a result of defects in the hotel premises known to them or which in the exercise of reasonable care they could discover. Restatement of Law, Torts-Negligence, §343; *Burchmore v. Antlers Hotel Co.*, 54 Colo. 314, 130 Pac. 846.

■ The door to the elevator shaft through which plaintiff proceeded to her injury was equipped with an automatic lock designed and intended to ·prevent the opening of the door from the outside when the elevator car was not at that floor. At the time of the accident the elevator car was not at this floor and it is certain that the automatic lock did not at the time operate so as to prevent opening the door from the passageway side. In 9 R. C. L., page 1239, §4, appears this statement: "The owner of the elevator must account for the results of all defects which he might have discovered by due inspection and investigation, but which he failed to discover and repair." In *Colorado Mtg. & Inv. Co. v. Giacomini*, 55 Colo. 540, 136 Pac. 1039, we reaffirmed the rule announced in an earlier decision, *Colorado Mtg. & Inv. Co. v. Rees*, 21 Colo. 435, 42 Pac. 42, as follows: "It was the duty of defendant, in operating the elevator in question to exercise the utmost care and diligence, and to provide and maintain proper and secure fastenings to

the doors opening into the elevator way that could not be opened or controlled from the outside." It is true, as defendants point out, that these latter pronouncements were made in cases involving the operation of passenger elevators, and they argue that as to a freight elevator the defendants' duty would be fulfilled by guarding entrances to the shaft in a less elaborate way such, as for example, the installation of removable bars or barriers. The question as to whether or not they are correct in this abstract assumption needs no consideration here where it undeniably remains the fact that defendants had elected to adopt a door purportedly equipped with automatic locks to guard these entrances, and the obligation of maintaining such fastenings on the door in proper condition cannot be avoided by the fact that some other means of preventing access to the elevator shaft, in the first instance, might have been used. The jury may have deduced that the very existence of the door with the automatic lock, which at the time was not functioning, actually created a more dangerous situation than if there had been no door, since then the elevator shaft would have been visible.

Under the doctrine of res ipsa loquitur proof of the fact that the accident resulted from a defect in a mechanical device within the control of the defendants, and which could not have occurred but for such defect, raises a presumption of negligence sufficient to require the submission of the case to the jury. *Denver Tramway Co. v. Kuttner,* 95 Colo. 312, 35 P. (2d) 852; *Colorado Springs Co. v. Reese,* 69 Colo. 1, 169 Pac. 572; *Velotta v. Yampa Valley Coal Co.,* 63 Colo. 489, 167 Pac. 971. Where defendants' negligence prima facie so arises, the duty rests with them to supply evidence explaining the accident, if they can, in a way which would overcome this presumption. *Denver Tramway Co. v. Kuttner, supra.* To meet the situation thus presented the defendants produced an elevator expert who testified that he had regularly inspected the elevator, including

the mechanism of the door and had made such an inspection a few hours before, and the morning after, plaintiff's accident without finding any defect. One of the defendants and several employees of the hotel testified that never before nor since, to their knowledge, had the automatic locks failed to properly operate.

As indicative of the exercise of reasonable care on their part, defendants introduced evidence intended to show that there was a white card, said to be about five by seven inches in size, containing the words: "Freight Elevator. To be used by employees only," posted on the right hand frame of the elevator door. The witnesses testifying to this point conceded, however, that this card shown in the photographs of the passageway admitted in evidence, was not there at the time of the accident, but they testified that previous to and afterwards they had there observed a card of generally similar appearance. Plaintiff testified that she saw no such card or notice at the time she opened the door. The evidence also was in conflict as to the degree of light in the passageway at the time of the accident. It is well established that where prima facie negligence arises from application of the rule of res ipsa loquitur, the question of whether the evidence supplied by the defendant is sufficiently credible and convincing to destroy the adverse presumption, is for the jury. *Denver Tramway Co. v. Kuttner, supra.* Thus it was essentially proper and necessary, under the evidence, that the ultimate question of the alleged negligence of the defendants be left to the jury for determination.

Defendants further contend that the plaintiff's injuries were caused by her contributory negligence in two respects: (1) In failing to follow the instructions of the garage employee to enter through the door to her left, and, (2) in failing to use her senses to determine whether or not the door she opened led to an elevator shaft. As has been mentioned, plaintiff testified that she attempted to open the door indicated but failed in

this effort, and in the dim light, which she said prevailed, concluded that what she had first thought was the door was a panel and upon observing the elevator door proceeded to open it in the mistaken belief that it led into the hotel lobby. Defendants produced evidence to the effect that the lefthand door, which was of the swinging variety without a latch, opening inward to the Dutch Grill room, never before or since the time of the accident here in question had failed to open at the slightest touch. They argue that this evidence conclusively disproves plaintiff's contention that she attempted to use the door. Manifestly this presents a question for the jury. The evidence of the defendants as to the previous and subsequent faultless operation of the *Grill Room* door can be no more conclusive as to what might have happened at the time of the accident than was their evidence that never before nor since the accident could the elevator door be opened from the outside, *when admittedly* on the occasion under consideration in reality it did so open.

With reference to the second asserted basis of alleged contributory negligence, the circumstances that plaintiff's injuries would not have occurred had her actions been different in a number of respects, is no sufficient ground for setting aside a verdict of the jury or reversing a judgment. Upon review the controlling question on this issue is whether her acts in doing what she did, viewed in the light of the evidence most favorable to her, sufficiently appeared to be the acts of a reasonable person, to justify the submission of the case to the jury. We unhesitatingly conclude that they were. "We have repeatedly held that where facts are disputed or inferences therefrom are reasonably disputable," the question of contributory negligence is for the jury. *Sprague v. Herbel,* 90 Colo. 134, 6 P. (2d) 930. See, also, *Rimmer v. Wilson,* 42 Colo. 180, 93 Pac. 1110; *Moffatt v. Tenney,* 17 Colo. 189, 30 Pac. 348; *Beck v. Denver,* 95 Colo. 46, 32 P. (2d) 261.

■ Thirty-seven instructions tendered by defendants were refused by the court. Defendants assign error to this action as well as to the giving of certain other instructions to the jury over their objections. An examination of the tendered instructions discloses that many of them are merely cumulative to the instructions given. Some are conflicting and others, for the reasons we have herein indicated, do not properly state the law applicable to the facts in the case. A further discussion of the tendered instructions and of the objections to the given instructions, in view of our conclusions previously expressed herein, would unnecessarily lengthen this opinion. We do not believe that any of the other assignments of error, all of which we have examined, are sufficiently meritorious to warrant further discussion.

The judgment is affirmed.

Mr. Chief Justice Hilliard and Mr. Justice Young concur.